## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**CAMARA BAIYINA NJERI TUNSILL,**

      **Plaintiff,**

**vs.**                      **Case No. 4:19cv449-MW-MAF**

**RICHARD CORCORAN,**
**and MICHAEL BRYAN,**

      **Defendants.**
_____/


## <u>REPORT AND RECOMMENDATION</u>

Plaintiff, proceeding pro se, filed a civil rights complaint against two
Defendants.  ECF No. 3.  Defendant Bryan, in his individual capacity, filed
a motion to dismiss, ECF No. 11, asserting that the complaint fails to state
a claim upon which relief can be granted.  Defendant Corcoran also filed a
motion to dismiss, ECF No. 16, arguing Eleventh Amendment immunity,
qualified immunity, and asserting that Plaintiff's due process rights were not
violated.  Plaintiff was provided an opportunity to respond to those motions,
ECF Nos. 15 and 29, and her opposition, ECF Nos. 30 and 31, has been
considered.  The motions are ready for a ruling.

**Allegations of the complaint, ECF No. 3**

Plaintiff was a school teacher at Kate Sullivan Elementary School in Tallahassee, Florida.  ECF No. 3 at 2, 6.  She was "a two-time recipient of the Best and Brightest teaching award" and was chosen as the "2018 Glenn-Howell Distinguished Educator of the Year."  *Id.* at 6.  Defendant Corcoran is the State Commissioner of Education and Defendant Bryan is the Principal of Kate Sullivan Elementary School.  *Id.* at 2.

The complaint alleges that on September 28, 2018, Plaintiff was "hand-delivered an official letter notifying [her] that [she] was on administrative leave with pay pending review of a recent incident."  *Id.* at 2.  Prior to receiving that letter, Plaintiff was not advised that she was being investigated, nor was she notified that she was "at risk of being suspended" or having an administrative complaint filed against her.  *Id.*  Plaintiff claimed that she was not "afforded an opportunity to be heard and object to any allegations before being suspended."  *Id.*

The complaint alleges that as a result of the "frivolous administrative complaint" filed by Defendant Corcoran, Plaintiff has been prevented from teaching.  *Id.* at 2, 6.  Plaintiff alleges that Defendants Corcoran and Bryan violated "the procedural due process clause" of the Fourteenth Amendment

by failing to give her an opportunity to be heard prior to suspending her.  *Id.*

at 3.  She further contends that the Defendants failed to give her "a full,

detailed account of the reasons for the proposed suspension well ahead of

time . . . ."  *Id.*; *see also* at 4.  As relief, Plaintiff seeks monetary damages

from Defendant Corcoran, including ten million dollars in punitive damages.

*Id.* at 7.  Plaintiff also seeks injunctive relief from the Florida Department of

Education and Leon County Schools.  *Id.*

**First Motion to Dismiss, ECF No. 11**

Defendant Bryan filed a motion to dismiss Plaintiff's complaint, ECF

No. 11, asserting that Plaintiff's complaint fails to state a claim.  *Id.* at 7-8.

Defendant argues that Plaintiff's alleged due process claim, which was

presented as a Fifth Amendment violation, is insufficient as a matter of

law.[1]  *Id.* at 10.  Further, Defendant Bryan argues that Plaintiff has not

established that he caused Plaintiff any injury, *id.* at 10-12, because the

School Board has the authority to suspend or fire a teacher, not a principal.

*Id.* at 21.  Moreover, Defendant contends that Plaintiff's procedural due

process claim "fails as a matter of law because Plaintiff (1) received notice

---

[1] Plaintiff's response clarifies that she brings her due process claim under the
Fourteenth Amendment.  ECF No. 30 at 7.  Accordingly, that argument need not be
addressed.

Case No. 4:19cv449-MW-MAF

and an opportunity to be heard and (2) had available state remedies." *Id.*

at 22.  Defendant also states that Plaintiff's due process claim also fails

because Plaintiff was a non-tenured teacher and had "no reasonable

expectation of reemployment entitling her to the protections of the

Procedural Due Process Clause." *Id.* at 27.  Finally, Defendant asserts

qualified immunity as a defense to this lawsuit.  *Id.* at 28.

**Second Motion to Dismiss, ECF No. 16**

Defendant Corcoran contends that, to the degree Plaintiff's complaint

asserted an official capacity claim against him, he is entitled to Eleventh

Amendment immunity.  *Id.* at 6-8.  As to the individual capacity claim,

Defendant raises qualified immunity as a defense.  *Id.* at 9.  Moreover,

Defendant advises that he "did not begin his role as Commissioner of

Education until December 31, 2018."  *Id.*  Thus, he cannot be liable for

events preceding his appointment.  For events following his appointment,

Defendant argues that "Plaintiff has not and cannot allege any facts to"

show that the Defendant violated Plaintiff's constitutional rights.  *Id.* at 10.

Defendant contends that Plaintiff's claims are insufficient and the

documents attached to her complaint belie her claims.  *Id.* at 11-12.

**Standard of Review**

The issue on whether a complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted is whether the plaintiff has alleged enough plausible facts to support the claim stated.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Twombly, 550 U.S. at 570, 127 S. Ct. 1955).[2]  The allegations of a complaint must do more than assert the elements of a cause of action, because conclusory statements unsupported by facts are not enough.  Ashcroft, 556 U.S. at 678, 129 S. Ct. 1937 (cited in Gill as Next Friend of K.C.R. v. Judd, 941 F.3d 504, 511 (11th Cir. 2019)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal,

---

[2] The complaint's allegations must be accepted as true when ruling on a motion to dismiss, Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992), cert. denied, 113 S. Ct. 1586 (1993), and dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations."  Twombly, 127 S. Ct. at 1965, (quoting Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)).

556 U.S. at 678, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127

S. Ct. at 1965); *see also* Wilborn v. Jones, 761 F. App'x 908, 910 (11th Cir.

2019).  "The plausibility standard" is not the same as a "probability

requirement," and "asks for more than a sheer possibility that a defendant

has acted unlawfully."  Iqbal, 556 U.S. at 677 (quoting Twombly, 550 U.S.

at 556).  A complaint that "pleads facts that are 'merely consistent with' a

defendant's liability," falls "short of the line between possibility and

plausibility."  Iqbal, 129 556 U.S. at 677 (quoting Twombly, 550 U.S. at

557).

The pleading standard is not heightened, but flexible, in line with Rule

8's command to simply give fair notice to the defendant of the plaintiff's

claim and the grounds upon which it rests.  Swierkiewicz v. Sorema, 534

U.S. 506, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002) ("Rule 8(a)'s

simplified pleading standard applies to all civil actions, with limited

exceptions.").  Pro se complaints are held to less stringent standards than

those drafted by an attorney.  Wright v. Newsome, 795 F.2d 964, 967 (11th

Cir. 1986) (citing Haines v. Kerner, 404 U.S. 519, 520-521, 92 S. Ct. 594,

596, 30 L. Ed. 2d 652 (1972)).  Nevertheless, a complaint must provide

sufficient notice of the claim and the grounds upon which it rests so that a

"largely groundless claim" does not proceed through discovery and "take

up the time of a number of other people . . . ."  <u>Dura Pharmaceuticals, Inc.</u>

<u>v. Broudo</u>, 544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005)

(quoted in <u>Twombly</u>, 550 U.S. at 558).

One additional principle must be highlighted - in deciding whether a

complaint states a claim upon which relief may be granted, courts may

"consider all documents that are attached to the complaint or incorporated

into it by reference."  <u>Gill as Next Friend of K.C.R.</u>, 941 F.3d at 511.  "The

Civil Rules provide that an attachment to a complaint generally becomes

'part of the pleading for all purposes,' Fed. R. Civ. P. 10(c), including for

ruling on a motion to dismiss."  See 941 F.3d at 511 (citing <u>Hoefling v. City</u>

<u>of Miami</u>, 811 F.3d 1271, 1277 (11th Cir. 2016) (stating that a "court can

generally consider exhibits attached to a complaint in ruling on a motion to

dismiss ....") (other citations omitted)).  In general, attaching exhibits to a

complaint "usually benefits the plaintiff, but not always."  941 F.3d at 511.

"As our predecessor court warned nearly 80 years ago, a 'litigant may be

defeated by his own evidence, the pleader by his own exhibits' when 'he

has pleaded too much and has refuted his own allegations by setting forth

the evidence relied on to sustain them.'" <u>Simmons v. Peavy-Welsh Lumber</u>

<u>Co.</u>, 113 F.2d 812, 813 (5th Cir. 1940) (quoted in 941 F.3d at 511).[3]

> In the <u>Parkerson</u> case, for example, the Court explained: "This
> complaint is plagued not by what it lacks, but by what it
> contains. All of the paths to relief which the pleading suggests
> are blocked by the allegations and the attached documents
> themselves, without more."

<u>Gen. Guar. Ins. Co. v. Parkerson</u>, 369 F.2d 821, 825 (5th Cir. 1966)

(quoted in 941 F.3d at 511-12).  Both this Court and the Defendants have

accepted Plaintiff's invitation to review the documents attached to her

complaint to determine if she has shown a plausible due process claim.

*See* ECF No. 3 at 5 (noting that attachments to the complaint may be

considered).

**Analysis**

**A.   Defendant Bryan**

The complaint, ECF No. 3, makes a conclusory allegation that

Plaintiff's procedural due process rights were violated by Defendant Bryan.

ECF No. 3 at 3.  However, the complaint itself failed to allege any facts

showing how Defendant Bryan was involved in events which support the

---

[3] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc),
the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth
Circuit handed down before October 1, 1981.

due process claim.  There are no facts alleged which show that Defendant

Bryan suspended Plaintiff or terminated her teaching certificate.  There are

no facts alleged by Plaintiff which alert Defendant Bryan to a specific action

taken by that Defendant to support Plaintiff's claim against him.

Defendant Bryan also points out that Plaintiff cannot establish that he

caused Plaintiff injury when the alleged unconstitutional conduct was the

failure to "provide notice and an opportunity to be heard prior to being

'suspended.'"  ECF No. 11 at 11.  Defendant Bryan has shown that "the

Leon County School Board is vested with the sole power to hire, suspend,

and fire teachers—not the principal."  *Id.*; *see also Id.* at 13.  "[T]he ultimate

responsibility for the decision to employ or not to employ a teacher rests

with the District School Board, not with the superintendent."  <u>Witgenstein v.</u>

<u>Sch. Bd. of Leon Cty.</u>, 347 So. 2d 1069, 1073 (Fla. 1st DCA 1977).

Under Florida law, a school principal supervises "public school

personnel as the district school board determines necessary."  FLA. STAT. §

1012.28(1).  A school principal is also "responsible for recommending to

the district school superintendent the employment of instructional

personnel to be assigned to the school to which the principal is assigned."

FLA. STAT. § 1012.28(2).  However, the principal is not statutorily authorized

to hire or fire a teacher.  Instead, a district school board "shall constitute the contracting agent for the district school system."  FLA. STAT. § 1001.41(4). The school board is charged with the responsibility to "[d]esignate positions to be filled, prescribe qualifications for those positions, and provide for the appointment, compensation, promotion, suspension, and dismissal of employees, subject to the requirements of chapter 1012."  FLA. STAT. § 1001.42(5)(a); *see also* FLA. STAT. § 1012.22(1) requiring a district school board to "[d]esignate positions to be filled, prescribe qualifications for those positions, and provide for the appointment, compensation, promotion, suspension, and dismissal of employees").  Despite the lack of specific factual allegations pertaining to any action of Defendant Bryan, it still remains that a school principal in the state of Florida lacks the legal authority to either suspend Plaintiff or dismiss her as an employee. Because such decisions are entrusted to the school board, the due process claim against Defendant Bryan is insufficient on its face.

Moreover, to the degree Plaintiff contends she was not given notice of a hearing prior to being restricted from communicating with teachers and parents, or visiting the Leon County School property, *see* ECF No. 30 at 6, Plaintiff does not have a protected interest in those activities.  Due process

exists to safeguard a protected right and liberty interest.  Bd. of Regents of

State Colleges v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L. Ed.

2d 548 (1972) (stating that "[t]o have a property interest in a benefit, a

person clearly must have more than an abstract need or desire for it. He

must have more than a unilateral expectation of it. He must, instead, have

a legitimate claim of entitlement to it.").[4]  Because Plaintiff is not entitled to

demand entrance onto private property or attend school activities, those

allegations are insufficient to state a viable due process claim.

Notably, Plaintiff did not request any monetary relief from Defendant

Bryan.  Plaintiff's requests for injunctive relief are also not directed to

Defendant Bryan as she seeks "a permanent injunction against the Florida

Department of Education and Leon County Schools to prevent them from

barring her from teaching and subbing and requests to be reinstated as the

Emotionally Handicapped teacher at Kate Sullivan Elementary School."

ECF No. 3 at 7.  Plaintiff implicitly appears to recognize that Defendant

---

[4] A teacher or professor does not necessarily have a protected interest in re-employment for the next school year based on a contract for one school year.  Roth, 408 U.S. at 578, 92 S. Ct. at 2710 (noting that the concept of liberty is stretched too far when a person is simply "not rehired in one job but remains as free as before to seek another."  408 U.S. at 575, 92 S. Ct. at 2708 (citation omitted).  Plaintiff was not dismissed or fired during the term of her contract.  Id. at 577, 92 S. Ct. at 2709.

Bryan lacks authority to grant relief.  Thus, in addition to not asserting a

valid basis for a claim against this Defendant, Plaintiff has not requested

any relief from Defendant Bryan.  The complaint is insufficient on its face

as it does not contain all three of Rule 8's requirements - "(1) a short and

plain statement of the grounds for the court's jurisdiction . . .; (2) a short

and plain statement of the claim showing that the pleader is entitled to

relief; and (3) a demand for the relief sought . . . ."  Fed. R. Civ. P. 8(a).

## B.    Procedural Due Process

"It is axiomatic that, in general, the Constitution requires that the state

provide fair procedures and an impartial decisionmaker before infringing on

a person's interest in life, liberty, or property."  McKinney v. Pate, 20 F.3d

1550, 1561 (11th Cir. 1994).  "[T]he Supreme Court has explained that a

'tenured employee is entitled to oral or written notice of the charges against

him, an explanation of the employer's evidence, and an opportunity to

present his side of the story' before a state or state agency may terminate

an employee."  McKinney, 20 F.3d at 1561 (quoting Cleveland Bd. of Educ.

v. Loudermill, 470 U.S. 532, 546, 105 S. Ct. 1487, 1495, 84 L. Ed. 2d 494

(1985)).  Thus, an employee is entitled to "some kind" of pre-termination

hearing which, although necessary, "need not be elaborate." Loudermill, 470 U.S. at 545, 105 S. Ct. at 1495.

It is accepted for present purposes that Plaintiff had a written contract which gave her a protected liberty interest in her continued employment. Cotton v. Jackson, 216 F.3d 1328, 1331 (11th Cir. 2000) (noting that "[i]t is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim"). The attachments provided with Plaintiff's complaint have been reviewed to determine whether Plaintiff was deprived of procedural due process. ECF No. 11. Those attachments reveal the following sequence of events.

On Thursday, September 27, 2018, Leon County Schools District Safety and Security Department "received an 'Institutional' notification from the Department of Children and Family (DCF)." ECF No. 3 at 27. The notification alleged that Plaintiff, an ESE teacher, and Mr. Sanders, a behavioral specialist, had "failed to report suicidal threats made by a" student on Tuesday, September 25, 2018, to the student's parents, the principal, or another school administrator. Id. At approximately 3:00 p.m. on September 27th, Leon County Superintendent of Schools, Rocky

Hanna, authorized a "Preliminary Personnel Investigation into" the matter. *Id.* at 28.

On Friday, September 28, 2018, Defendant Bryan placed Plaintiff "on administrative leave with pay pending the completion of [the] investigation." ECF No. 3 at 28. Plaintiff was "hand delivered" a letter which advised Plaintiff that she was "placed on administrative leave with pay" and must not be present on school property or at LCS activities without prior permission from Defendant Bryan. *Id.* at 31. Further, Plaintiff was advised that she must not "communicate with parents, students, or staff" but must make herself "available by phone during [her] normal workday hours for contacts with District staff and" Defendant Bryan. *Id.*

Plaintiff was informed by written letter on October 1, 2018, that "Leon County Schools [LCS] [had] scheduled an administrative investigatory interview" with her to discuss "a recent allegation." *Id.* at 32. She was advised that she would "be given an opportunity at that time to respond to the allegations" and she could also provide a written statement. *Id.* The interview was set for Friday, October 5, at 10:00 a.m. *Id.*

Plaintiff objected to that meeting and requested a "60-day continuance as well as a full evidentiary hearing, open to the public." *Id.* at

33.  Plaintiff also wanted the hearing to be held off LCS property and she demanded "a certified court reporter be present."  *Id.*

Plaintiff's request for a continuance was denied and she was advised that the meeting would be held as scheduled on October 5, 2018, at 10:00 a.m.  *Id.* at 15.  She was informed once again that she would be given an opportunity to respond to the allegations.  *Id.*  Furthermore, the coordinator told Plaintiff that she would "not be permitted to have a stenographer present during [her] interview."  *Id.* at 9.  However, she was informed that the interview would be recorded if she so desired and she could be provided "with a copy of the recording at the conclusion of [the] investigation."  *Id.*

Additionally, Defendant Bryan responded to Plaintiff and informed her that it was "not an option to refuse to attend" the interview; she was "required to attend."  *Id.* at 16.  Defendant Bryan also said that it was "not a legal proceeding" and he reiterated that she had been placed "on leave of absence with pay," she was not suspended.  *Id.*  That information was also conveyed to Plaintiff in an email from the investigator.  *Id.* at 11.

On October 5, 2018, Plaintiff met with investigator Jimmy Williams for the employee interview as part of the preliminary personnel investigation.

*Id.* at 39.  Plaintiff initialed a form which affirmed that she had been "given appropriate notice of the interview and [had] been provided the opportunity to have a representative present during questioning."  *Id.*  She also acknowledged that as a "professional public employee," if she also held "state certification," the results of the investigation might "be forwarded to the appropriate commission or compliance entity for further review and action."  *Id.* at 39.

After "review of all the information" gathered during the investigation, the Leon County Schools Safety, Security and Professional Practices found that Plaintiff "failed to promptly report a suicide threat made by one of her students while in her class to school administration or the student's parents."  ECF No. 3 at 25.  It was concluded that such behavior constituted a violation of Florida statute 1012.795.  *Id.*  The Leon County Schools Safety, Security and Professional Practices completed the Florida Department of Education Office of Professional Practices Services ("PPS") mandatory reporting form and forwarded the "materials related to the sustained allegations against" the Plaintiff to PPS.  *Id.* at 25-30.

On October 17, 2018, Plaintiff was informed by written letter from Defendant Bryan that she was to receive a "reprimand" for "failure to report

a serious incident fully in conjunction with LCSB Policy 5350, Suicide

Intervention Procedures, and failure to exercise the professional judgment

expected of a Leon County Schools employee." *Id.* at 40-42.  The letter

advised that the investigation revealed that Plaintiff "failed to notify" the

administration "immediately of a student's threat to harm himself." *Id.* at

40.  She also "failed to timely notify the parent of this potentially dangerous

situation." *Id.*  The letter informed Plaintiff that "further instances of [that]

type of behavior [would] be grounds for more severe disciplinary action, up

to and including dismissal." *Id.*  Finally, the letter advised Plaintiff that the

investigation findings and a copy of the reprimand letter would be

"forwarded to the Florida Department of Education Office of Professional

Practices Services." *Id.*  Plaintiff was given an opportunity to provide a

written response to the reprimand letter within ten days. *Id.* at 42.

On November 2, 2018, Plaintiff submitted her objection to the

reprimand letter which had been hand delivered to her.  ECF No. 3 at 49-

51.  She pointed out that while an "administrative procedure concerning

suicide intervention [had] been developed," no such training had been

provided. *Id.* at 49.  Plaintiff requested that annual training on that topic "be

mandated from here on out." *Id.*  She also asserted her due process rights

and complained that before she was "placed on 'administrative leave with pay,'" she was "never given a chance to protect [her] rights before [she] was sent home and essentially ostracized."  *Id.* at 50.  She claimed that "[f]or all intents and purposes, [she] was suspended with pay."  *Id.*  Yet she said that pay did "not change the situation" or make her absence from school easier.  *Id.* at 50-51.

On November 8, 2018, letters were sent from the Florida Department of Education's Office of Professional Practices Services acknowledging receipt of the report concerning Plaintiff.  ECF No. 3 at 43-44.  Plaintiff was notified that the Office would be conducting an investigation into the allegations that she "failed to promptly report a suicide threat made by a student" to "determine if disciplinary actions should be pursued against" her Florida Educator Certificate.  *Id.* at 45.  Plaintiff was provided an opportunity to provide "evidentiary witnesses or documents pertinent to the" investigation.  *Id.*  She was also informed that after the investigation was concluded, she would be "notified of the opportunity for an Informal Conference."  *Id.*

On November 21, 2018, Plaintiff sent a letter to the investigator outlining her position, providing several documents to be considered, and

providing the identification of an evidentiary witness.  ECF No. 3 at 47-53.

In particular, Plaintiff disputed that the "suicide threat" was made in her

classroom and in her presence, and she complained that the "Leon County

Schools Superintendent failed to train instructional personnel and school

administrators . . . ."  *Id.* at 47.  Plaintiff advised that suicide training "was

only implemented after this incident."  *Id.*[5]

On March 5, 2019, Plaintiff was notified that PPS had concluded its

preliminary investigation and was providing Plaintiff "an opportunity to

review and respond."  ECF No. 3 at 60.  An informal telephone conference

was scheduled with Plaintiff for March 19, 2019, at 9:00 a.m., although

Plaintiff was advised that she could request to "appear in person to

respond" as well.  *Id.*

Defendant Bryan sent Plaintiff a letter dated April 29, 2019, which

Plaintiff acknowledged receiving on April 30, 2019, which informed Plaintiff

that Defendant Bryan was recommending to Superintendent Hanna that

Plaintiff be reappointed and given an Annual Contract for the 2019-2020

---

[5] Notably, a statement was made by Defendant Bryan in support of Plaintiff on December 18, 2018.  ECF No. 3 at 56.  That statement, along with a statement from guidance counselor Wolak, *see* ECF No. 3 at 57-58, provides a detailed history of what took place with the student as well as subsequent events concerning the investigation.

school year.  *Id.* at 71.  The letter advised that the recommendation could "be withdrawn due to the District's uncertain budgetary status."  *Id.*

Notwithstanding that letter, another letter was issued which was also dated April 19, 2019, but which was hand delivered to Plaintiff on May 17, 2019, which stated that after "careful consideration," Defendant Bryan was "recommending to Superintendent Hanna that [Plaintiff] not be reappointed for the 2019-2020 school year."  *Id.* at 73.  The letter confirms that Plaintiff's contract "with the Leon County School District expire[d] on June 4, 2019.  *Id.*

Plaintiff was, nevertheless, approved to be a substitute teacher with LCS effective August 8, 2019.  ECF No. 3 at 75.  Plaintiff was informed that her substitute teaching certificate was valid for five years, although "substitute teachers must be reappointed each school year as a condition of employment."  *Id.* at 76.

Just a week later, Plaintiff received a certified letter dated August 14, 2019, from Defendant Richard Corcoran, Commissioner of Education with the Florida Department of Education, advising that he found "probable cause exist[ed] to justify sanctions against" Plaintiff's Florida educator certificate.  *Id.* at 79.  The letter advised that an "Administrative Complaint

and Election of Rights (appeal) form" was enclosed which Plaintiff must return to the PPS Office.  *Id.*

The Administrative Complaint alleged that on September 25, 2018, Plaintiff "failed to protect the safety ad welfare of a student when she failed to immediately notify a relevant party that L.S., a fifth grade male Exception Student Education (ESE) student, made comments that he wanted to kill himself."  *Id.* at 80.  The complaint alleged that Plaintiff "allowed L.S. to leave the protection of the school grounds without ensuring that L.S. would be safe and protected."  *Id.*  It was further alleged that Plaintiff made only "a minimal effort to contact the school guidance counselor and/or the student's parent" and ceased efforts to protect the student until the following day.  *Id.*  Subsequently, the student threatened to kill himself at home and was Baker Acted.  *Id.*

The complaint alleged that Plaintiff violated § 1012.795(1)(j), Florida Statutes, and "violated the Principles of Professional Conduct for the Education Profession prescribed by State Board of Education rules."  *Id.* at 81.  Defendant Corcoran recommended that Plaintiff be given an "appropriate sanction."  *Id.*

Based on receipt of "the Finding of Probable Cause from the Office of Professional Practices at the Florida Department of Education dated August 14, 2019," Plaintiff's appointment as a substitute teacher was immediately rescinded until issuance of "a final order related to sanctions" imposed by the Department.  ECF No. 3 at 85.  Plaintiff was notified by letter from LCS dated August 30, 2019, and requested to return her identification badge credentials.  *Id.*

Plaintiff elected to have a formal hearing to "dispute the allegations of the Administrative Complaint."  *Id.* at 87.  Plaintiff also submitted a written objection to the complaint, *id.* at 88, and an affidavit.  *Id.* at 89.

Although Plaintiff's complaint alleged that she was suspended without due process, the attachments to her complaint refute that assertion. Defendant Bryan placed Plaintiff on administrative leave with pay prior during the time an administrative investigation was underway.  Plaintiff was not suspended by Defendant Bryan and there is no evidence that she suffered any tangible loss of employment benefits.  The Leon County Schools sanctioned Plaintiff with a written reprimand only.

Having reviewed the documentary evidence submitted as exhibits to the complaint, it is evident that Plaintiff's alleged due process claim is

insufficient as a matter of law.  The reason is that Plaintiff was <u>not</u>

suspended without being given an opportunity to be heard.  As the Fifth

Circuit Court of Appeals found in <u>Parkerson</u>, 369 F.2d at 825, "[t]his

complaint is plagued not by what it lacks, but by what it contains." <u>Gill as</u>

<u>Next Friend of K.C.R.</u>, 941 F.3d at 512 (quoting <u>Parkerson</u>).  Any path to

relief under the Due Process Clause is blocked by the documents attached

to Plaintiff's complaint.  <u>Parkerson</u>, 369 F.2d at 825; *see also* <u>Crenshaw v.</u>

<u>Lister</u>, 556 F.3d 1283, 1292 (11th Cir. 2009) (accepting as true on

summary judgment police officers' reports that plaintiff had attached to his

complaint because the reports "refute[d] [the plaintiff's] conclusory and

speculative allegation [in his complaint] about what the officers saw").

"[W]hen exhibits attached to a complaint 'contradict the general and

conclusory allegations of the pleading, the exhibits govern.'" <u>Gill as Next</u>

<u>Friend of K.C.R.</u>, 941 F.3d at 514 (citation omitted); <u>Hoefling v. City of</u>

<u>Miami</u>, 811 F.3d 1271, 1277 (11th Cir. 2016) (stating that "if the allegations

of the complaint about a particular exhibit conflict with the contents of the

exhibit itself, the exhibit controls").  Here, Plaintiff generally, and vaguely,

alleged that her due process rights were violated by Defendant Bryan.

However, the exhibits reveal that Plaintiff was provided due process and

given an opportunity to be heard prior to receiving a written reprimand. Thus, because Defendant Bryan did not violate Plaintiff's due process rights, his motion to dismiss, ECF No. 11, should be granted.

## C.    Defendant Corcoran

As explained in the motion to dismiss, Defendant Corcoran began his employment as Commissioner of Education on December 31, 2018, ECF No. 16 at 3, and Plaintiff does not dispute that fact.  ECF No. 31 at 7. Defendant cannot be held personally liable for any events prior to that date. Indeed, the Defendant's only involvement in this case was in concluding there was probable cause to proceed and filing an administrative complaint against Plaintiff's teaching certificate on August 14, 2019.  ECF No. 16 at 3 and 9; *see also* ECF No. 3 at 2.  It is that action which effectively suspended Plaintiff's ability to teach as the attachments to her complaint[6] indicate that based on the Defendant's finding of probable cause, Plaintiff's appointment as a substitute teacher was rescinded until issuance of "a final order."  The parties have not shown that a final order has yet been entered.

---

[6] Plaintiff alleged that Defendant filed "a frivolous administrative complaint" against her which prevented her from teaching.  ECF No. 3 at 2.  It can hardly be said that the complaint was frivolous in that the allegation brought against Plaintiff was investigated and sustained by the LCS's own investigation, resulting in a written reprimand.

Case No. 4:19cv449-MW-MAF

The problem with Plaintiff's claim against Defendant Corcoran is the same problem she faced against Defendant Bryan - the documents attached to Plaintiff's complaint reveal that Plaintiff's assertions in the complaint are not correct.  Defendant Corcoran filed an administrative complaint and recommended that "appropriate sanctions" be taken. Plaintiff elected to have a formal hearing to "dispute the allegations of the Administrative Complaint."  Plaintiff also submitted a written objection to the complaint and an affidavit.  Thus, Plaintiff was given notice of the charge against her and provided with a meaningful opportunity to respond.

The Supreme Court has held that "[a]n essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S. Ct. 652, 656, 94 L. Ed. 865 (1950) (quoted in Loudermill, 470 U.S. at 542, 105 S. Ct. at 1493).  At a minimum, the Constitution requires that an employee be notified about a charge levied against her and be afforded an opportunity to "respond orally and in writing and present rebuttal affidavits." Loudermill, 470 U.S. at 542, 105 S. Ct. at 1493 (citing Barry v. Barchi, 443 U.S. 55, 65, 99 S. Ct. 2642, 2649, 61 L. Ed. 2d 365 (1979) (finding "no due

process violation where horse trainer whose license was suspended 'was given more than one opportunity to present his side of the story'")).  A "full adversarial evidentiary hearing" is not required in the employment context; all that is required is "notice and an opportunity to respond."  470 U.S. at 546, 105 S. Ct. at 1495.  Here, Plaintiff was afforded due process.  She elected to have a formal hearing before the Florida Division of Administrative Hearings, she filed a written objection to Defendant Corcoran's complaint, and she submitted her own affidavit.  ECF No. 3 at 87-90.  The motion to dismiss filed by Defendant Corcoran should also be granted.

In light of the conclusion that Plaintiff's due process rights were not violated, there is no need to address the Defendants' assertions of qualified immunity or Eleventh Amendment immunity.  Monetary damages cannot be awarded if the claims are insufficient.  Here, Plaintiff's attachments demonstrate that she cannot support her due process claims.

## RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that the motion to dismiss, ECF No. 11, filed by Defendant Bryan be **GRANTED**, that the motion to dismiss, ECF No. 16, filed by Defendant Corcoran by

**GRANTED**, and Plaintiff's complaint, ECF No. 3, be **DISMISSED** for failure to state a claim upon which relief may be granted.

**IN CHAMBERS** at Tallahassee, Florida, on July 29, 2020.


S/     Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.